FILED
CLERK
12:17 pm, Jan 13, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

JASON SCHOLDER, on behalf of himself and all others similarly situated,

       Plaintiff,

 -against-

SIOUX HONEY ASSOCIATION COOPERATIVE,

       Defendant.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 16-5369 (GRB)

**GARY R. BROWN, United States District Judge:**

  Plaintiff Jason Scholder commenced this putative class action against defendant Sioux Honey Association Cooperative alleging claims under New York State's consumer protection statutes prohibiting deceptive business practices and false advertising, as well as common law claims for breach of express warranty and unjust enrichment based on alleged misrepresentations in the company's labeling of its honey products marketed under the SueBee brand. The gravamen of Sioux Honey's alleged misrepresentations and omissions is that the words "Pure" or "100% Pure" on the SueBee product labels are deceptive because the honey contains glyphosate, a synthetic chemical and herbicide. Presently before the Court is defendant's motion to dismiss the amended class action complaint (hereinafter the "complaint") pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the reasons that follow, defendant's motion is granted in part and denied in part.

**BACKGROUND**

**1. Factual Background**

The following facts, drawn from the complaint, are assumed to be true for purposes of the pending motion to dismiss and are viewed in the light most favorable to plaintiff, the non-moving party:

Sioux Honey, a cooperative in Sioux City, Iowa, manufactures, markets, sells and distributes SueBee honey in retail stores in New York and throughout the United States.  Docket Entry ("DE") 41 ¶¶ 23-24.  Scholder, a citizen of New York, purchased SueBee honey on multiple occasions at a Stop and Shop supermarket located in Port Washington, New York.  *Id.* ¶ 25.  Scholder made these purchases after seeing and relying upon the product label representing the SueBee honey to be "Pure" or "100% Pure" and was willing to pay more for the honey because of the representation.  *Id.* ¶¶ 26-27.  However, Scholder alleges that SueBee honey is not "Pure" or "100% Pure" because the honey contains the biocide glyphosate, an artificial chemical and potential carcinogen.  *Id.* ¶ 2.  Because SueBee honey contains glyphosate, plaintiff contends that the use of the words "Pure" or "100% Pure Unfiltered Honey" on the label is false and misleading.  *Id.* ¶¶ 2, 37.  Scholder maintains that "[c]onsumers reasonably believe that a product labeled '[P]ure' or '100% [P]ure' does not contain synthetic substances, such as artificial biocides," *id.* ¶ 35, and that had he known at the time that SueBee honey contained glyphosate, he would not have considered the honey to be pure and would not have paid a premium for the product, *id.* ¶¶ 27-28.  Plaintiff states that he plans to purchase SueBee honey in the future if he can rely on accurate marketing representations on the product's label.  *Id.* ¶¶ 59-60.

Plaintiff provided photos of the product labels for SueBee honey, *id.*, Ex. 1:

 

### 2. Procedural Background

On September 27, 2016, Scholder commenced this action on behalf of himself and a nationwide class of all consumers who purchased SueBee honey, as well as a sub-class of all New York residents who purchased the product. DE 1. Plaintiff alleges four causes of action against Sioux Honey: (1) violation of New York General Business Law § 349 for deceptive practices; (2) violation of New York General Business Law § 350 for false advertising; (3) breach of express warranty; and (4) unjust enrichment. DE 41 ¶¶ 82-108.

On June 27, 2017, the Honorable Arthur D. Spatt (i) stayed this matter pending the outcome of the FDA's determination regarding the permissible uses of the term "natural" in food labeling; (ii) denied defendant's motions to dismiss without prejudice; and (iii) granted defendant leave to refile the motions after the FDA's decision. Plaintiff thereafter moved to vacate the

3

stay, and Judge Spatt denied the application on March 5, 2019. DE 35. The case was reassigned from Judge Spatt to the undersigned on June 30, 2020.

By Order dated October 15, 2020, the Court lifted the stay and granted plaintiff thirty days to amend the complaint. Plaintiff filed an amended complaint on November 6, 2020. DE 41. Defendant thereafter filed a pre-motion letter outlining the grounds for its proposed motion to dismiss the amended complaint in accordance with the undersigned's individual rules. DE 43. Following plaintiff's response to the letter, DE 44, the Court held a pre-motion conference on January 4, 2021. At the conference, the Court directed the parties to submit a brief focused on the sole issue of the use of the term "Pure" or "100% Pure" on the SueBee label and the implications thereof regarding the plausibility of plaintiff's claims, particularly in light of the Second Circuit's decision in *Axon v. Florida Natural Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020).

Defendant now moves to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. DE 46. Plaintiff opposes the motion. DE 48, 49.

**DISCUSSION**

**Standard of Review**

Generally, motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB), 2017 WL 9485714, at *3-4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein. The gravamen of that standard, of course, is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible.

4

**Analysis**

As noted, Plaintiff alleges the following causes of action against Sioux Honey: (1) violations of §§ 349 and 350 of New York General Business Law; (2) breach of express warranty; and (3) unjust enrichment. DE 41 ¶¶ 82-108. In addition, plaintiff seeks injunctive relief. *Id.* at ¶ 61 and page 22.

**(1) New York General Business Law § 349 and § 349**

Section 349 of the New York General Business Law ("GBL") prohibits "deceptive acts and practices in the conduct of any business, trade or commerce or in furnishing of any service." N.Y. Gen. Bus. Law § 349. A deceptive act or practice is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. False advertising means "advertising, including labeling . . . if such advertising is misleading in a material respect." *Id.* § 350-a(1). Both provisions permit "any person who has been injured by reason of any violation" thereof to bring an action to recover damages or to enjoin the deceptive act or practice, or both. *Id.* §§ 349(h), 350-e(3).

"The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to § 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002); *see also Gristede's Foods Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (the standards under Sections 349 and 350 are "substantively identical"). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury

5

as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2009)).

There is no dispute that the sale of defendant's product constitutes consumer oriented conduct. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015). This element "may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." *Id.* Here, plaintiff alleges that defendant marketed and sold its honey nationwide, including New York, and plaintiff and the putative class members purchased the product. DE 41 ¶¶ 24-25, 56. In addition, plaintiff asserts that he and other members of the class were deceived by defendant's false and misleading representations on the product's label. *Id.* ¶¶ 53-56. These allegations are sufficient to satisfy the first element. *See Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999) (observing that claims under Sections 349 and 350 of the GBL "apply to virtually all economic activity, and their application has been correspondingly broad").

To determine whether a product's label is materially misleading, the operative question is an objective one: whether "a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Jessani v. Monini N. Am. Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (internal quotation marks and citation omitted); *see also Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886 (EK), 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021). In evaluating whether the SueBee label is misleading, the Court considers whether the complaint "plausibly alleges that a reasonable consumer would ascribe the meaning that plaintiffs allege they ascribed to it." *Fishon v. Peloton Interactive, Inc.*, No. 19-CV 11711 (LJL), 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020). This analysis focuses on the precise representations made on the product's label, *see, e.g., Axon*, 813 F. App'x at 705 (distinguishing between representations that a product is "pure" and a representation that a

6

product is "natural"), "in light of its context on the product label or advertisement as a whole," *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (internal quotation marks and citations omitted). The question is one of gestalt: the Court considers the entire mosaic of the label "rather than each tile separately." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 Civ. 14245 (LTS), 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007); *see Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200-01 (2d Cir. 2019) (holding "[c]ontext is crucial" when determining if a label is materially misleading, and that context includes information on the product's packaging along with the product itself). Usually, the reasonable consumer inquiry is a question of fact not suited for resolution at the motion to dismiss stage. *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 278 (E.D.N.Y. 2021). Nevertheless, in certain cases, whether a product's label is materially misleading may be decided as a matter of law. *See also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (per curium).

Defendant urges the Court to conclude as a matter of law that SueBee's label is not materially misleading to a reasonable consumer because any trace amounts of glyphosate in the honey was the result of the natural process of bees interacting with agriculture and not its production process, and thus its honey was in fact "Pure." DE 44, 46. At this stage of the proceedings, however, the Court cannot conclude as a matter of law that the label on the SueBee products would not be misleading to a reasonable consumer. Stated differently, it is not so clear that a reasonable consumer would understand the terms "Pure" or "100% Pure" to mean that trace amounts of glyphosate could end up in honey from the bees foraging process. *See Grossman*, 516 F. Supp. 3d at 278 (holding "a party seeking to dismiss a false labeling claim

must extinguish . . . the possibility that a reasonable consumer could be misled into believing the [p]roducts contained no synthetic materials") (internal quotation marks and citation omitted).

To the contrary, plaintiff has plausibly explained that a reasonable consumer viewing the product labeled "Pure" or "100% Pure" would interpret the terms to mean the final honey would be free of substances other than honey, including glyphosate. As the Second Circuit noted in *Axon*:

> [u]nlike "natural," the words "pure" and "100% natural" indicate the absolute absence of contaminants. *See, e.g., Pure*, Merriam-Webster Dictionary, http://merriam-webster.com/dictionary/pure (defining "pure" as "free from dust, dirt, or taint").

813 F. App'x at 705.

Moreover, viewing the label in context, the Court finds that a reasonable consumer could be misled into believing a product labeled "100% Pure Unfiltered Honey" contained no contaminants. Unlike the specific packaging in *Axon* where the Second Circuit found that "the term 'natural' occurred only within the brand name 'Florida Natural' and nowhere else on the packaging," and that the "packaging d[id] not describe the orange juice as 'natural' on a stand-alone label or as '100% natural,'" 813 F. App'x at 705, here, the product label did describe the honey as "100% Pure Unfiltered Honey" on a stand-alone basis.

Further, the complaint alleges that the targeted consumers, including plaintiff, "value pure foods" in part in order to avoid chemicals and additives, such as glyphosate, and attain health and wellness, and would not consider a product containing synthetic substances or chemicals to be "Pure" or "100% Pure." DE 41 ¶¶ 31, 35-36. To bolster this claim, plaintiff provided detailed allegations, including (i) a declaration by the International Agency for Research on Cancer ("IARC"), a research arm of the World Health Organization, that glyphosate is a probable human carcinogen; (ii) research abstracts documenting that glyphosate is a

8

suspected human endocrine disrupter in human cell lines; and (iii) studies reflecting that even low doses of glyphosate-based herbicides could nevertheless cause liver and kidney damage. *Id*. ¶¶ 2, 37-45. The IARC declaration, research abstracts and studies, at a minimum, make plaintiff's allegations plausible rather than merely possible, and therefore, the Court is unable to conclude, as a matter of law, that the product's label would not be materially misleading to a significant portion of the general consuming public or to the targeted customers who value pure foods acting reasonably under the circumstances. *See Stolz v. Fage Dairy Processing Indus.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 15, 2015) (observing dismissal appropriate only if plaintiff's claims are "patently implausible," not rational or unrealistic); *see also In re Frito-Lay N. Am., Inc. v. All Nat. Litig.*, No. 12-MD-2413 (RRM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (noting dismissal as a matter of law is appropriate where a plaintiff's allegations regarding misleading and deceptive labeling "border on fantasy"). Hence, plaintiff has adequately pled the second element of the GBL claims.

   Finally, with respect to the third element of the GBL claims, plaintiff alleges harm in the form of economic injury in that he (and the putative class members) paid a premium price for the product that he (and the class members) thought was pure and free from contaminants, such as artificial biocides. A plaintiff satisfies this element under Sections 349 and 350 when the plaintiff avers that "on account of a materially misleading practice, [the plaintiff] purchased a product and did not receive full value of [the] purchase." *Orlander.*, 802 F.3d at 302. Courts have found that paying a premium price for a product is sufficient injury to state a claim under Sections 349 and 350. *See, e.g., Axon*, 813 F. App'x at 703-04; *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395 (JG), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) ("Injury is adequately

9

alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations").

In sum, plaintiff has plausibly alleged that Sioux Honey engaged in consumer-oriented activity that was materially misleading and caused him a cognizable injury. Accordingly, defendant's motion to dismiss plaintiffs' New York General Business Law claims is denied.

### (2) Breach of Express Warranty

In order to assert a breach of express warranty claim under New York law, "a plaintiff must show an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 111-12 (2d Cir. 2010) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (1989) (internal quotation marks omitted)). However, to maintain a claim of breach of express warranty, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of [the] breach or be barred from any remedy." *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C.§ 2-607(3)(a)) (internal quotation marks omitted). In order to satisfy the notice requirement, plaintiff must "alert defendant that the transaction was troublesome," but need not "include a claim for damages or threat of future litigation." *Grossman*, 516 F. Supp. 3d at 282 (internal quotation marks and citations omitted). "[R]equiring notice is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.Y. U.C.C.§ 2-607 cmt. 4. Although "[t]he sufficiency and timeliness of the notice is generally a question for the jury," *Tomasino*, 44 F. Supp. 3d at 260, to sufficiently satisfy the pre-suit notice requirement, "plaintiff must provide factual allegations – such as the date and

10

method plaintiff sent a pre-suit notice – supporting the contention that [he] notified defendant of the alleged breach within a reasonable time," *Grossman*, 516 F. Supp. 3d at 283.

Inasmuch as the complaint does not contain any allegations or specific facts that plaintiff notified defendant of a breach within a reasonable time after his discovery, he has failed to satisfy the pre-suit notice requirement. DE 41; *see Grossman*, 516 F. Supp. 3d at 283 (concluding plaintiff failed to allege pre-suit notice where complaint merely stated that plaintiff "placed defendants of notice of their breach giving defendants an opportunity to cure their breach, which they refused to do" without additional factual allegations); *see Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 144 (E.D.N.Y. 2018) (holding that plaintiff failed to set forth a breach of warranty claim where complaint made "no allegations and state[d] no facts showing that notice was provided to defendant"); *see also Budhani v. Monster Energy Co.*, 20-cv-1409 (LJL), 2021 WL 1104988, at *11 (S.D.N.Y. Mar. 22, 2021) (dismissing breach of express warranty claims for failure to provide timely notice to defendant); *Colpitts v. Blue Diamond Growers,* 20 Civ. 2487 (JPC), 2021 WL 981455, at *17 (S.D.N.Y. Mar. 16, 2021) (dismissing breach of warranty claim because plaintiff's "failure to satisfy the pre-suit notice requirement [was] fatal"); *Cosgrove v. Or. Chai. Inc.*, 19 Civ. 10686 (KPF), 2021 WL 706227, at *15 (S.D.N.Y. Feb. 21, 2021) (dismissing breach of warranty claim where plaintiffs failed to give defendant any notice); *Singleton v. Fifth Gen., Inc.*, No. 5:15-CV-474 (BKS)(TWD), 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) ("Plaintiff's express warranty claim must fail because there is no allegation that he made a timely notification to [d]efendant of any breach of warranty.").

Accordingly, because plaintiff failed to allege pre-suit notice as required for a breach of express warranty claim, defendant's motion to dismiss the breach of express warranty claim is granted.

### (3) Unjust Enrichment

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (internal quotation marks and citation omitted). Unjust enrichment "lies as a quasi-contract claim" that "contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotation marks and citation omitted). However, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, the claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id*. "[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id*. Nevertheless, Rule 8(d)(3) of the Federal Rules of Civil Procedure permits a party to state "as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Recently, the Second Circuit noted that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim[.]" *Axon*, 813 F. App'x at 706.

Plaintiff has alleged that (i) defendant benefited at plaintiff's expense in that plaintiff purchased the honey at a premium price; and (ii) equity and good conscience require restitution because defendant's profit was due to allegedly fraudulent and misleading representations that the honey was "100% Pure." DE 41 ¶¶ 106-08. Defendant argues that this claim should be dismissed because "there is no plausible allegation of fraud that would render [Sioux Honey's] enrichment unjust." DE 46 at 11. As discussed *supra*, because the Court finds that plaintiff has plausibly alleged that defendant may have engaged in materially misleading conduct, defendant's argument fails. Moreover, whether plaintiff can recover will turn on issues of fact that cannot be determined on the motion to dismiss. Finally, although the unjust enrichment claim may ultimately be deemed duplicative of plaintiff's other theories of recovery, at this stage of the proceedings, plaintiff's allegations are sufficient. *See, e.g., Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 147 (S.D.N.Y. 2021) (denying motion to dismiss unjust enrichment claim pleaded in the alternative to other theories of liability). Accordingly, defendant's motion to dismiss this claim is denied.

**(4) Injunctive Relief**

Plaintiff seeks an injunction directing Sioux Honey to correct its allegedly misleading and unfair business practices and refrain from using deceptive labels on its products. DE 41 ¶¶ 19, 46. In addition, plaintiff seeks class-wide injunctive relief. *Id.* ¶ 81. Defendant argues that plaintiff lacks standing to seek injunctive relief on behalf of himself or a putative class because he cannot allege imminent future harm. DE 46 at 11-12. The Court agrees.

To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a

likelihood that the injury will be redressed by a favorable decision." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (internal quotation marks and citations omitted). "Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (internal quotation marks and citations omitted). "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a plaintiff cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (internal quotation marks and citations omitted). "Although past injuries may provide a basis to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [h]e is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). The Second Circuit has made clear that "past purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni*, 964 F.3d at 147. Thus, "past purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Id*.

Plaintiff's allegations are insufficient to establish standing to obtain injunctive relief for himself or a putative class as he has failed to allege any imminent threat of continued injury. To the contrary, plaintiff alleges that he plans to purchase the product in the future if he can rely on nondeceptive marketing representations. That is to say, plaintiff would purchase the SueBee honey if he could rely on the representation on the label that the honey was "Pure" or "100% Pure." In such a circumstance, Sioux Honey would either have to change the label or ingredients in its honey. Therefore, Scholder would not purchase defendant's product with the current state of ingredients or label because as set forth in the complaint, the product is allegedly deceptive.

14

Inasmuch as plaintiff knows the honey purportedly contains glyphosate, he would not purchase the product in the current state and thus cannot show an imminent risk of future deception and injury. *Cf. Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465-66 (S.D.N.Y. 2020) (noting that because plaintiffs in a false advertisement case have necessarily become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them"). Hence, any "future injury is merely conjectural or hypothetical" because even if plaintiff purchased the honey, he would do so "with exactly the level of information" he had from the outset of this lawsuit. *Berni*, 964 F.3d at 147-48; *see Silva v. Hornell Brewing Co.*, No. 20-cv-756 (ARR) (PL), 2020 WL 4586394, at *7 (E.D.N.Y. Aug. 10, 2020) ("To the extent that plaintiff was deceived by the appearance of the phrase 'All Natural' on the Product label, the existence of this lawsuit shows that he is now aware that the Product contains synthetic ingredients. Thus, he will not be harmed again in the same way, and he lacks standing to seek an injunction."). Accordingly, plaintiff's claims for injunctive relief are dismissed for lack of standing.

**CONCLUSION**

Based on the foregoing, defendant's motion to dismiss is granted as to the express warranty claim and requests for injunctive relief, but denied as to plaintiff's GBL and unjust enrichment claims. The parties are directed to proceed with discovery with the assigned Magistrate Judge.

Dated: Central Islip, New York
      January 13, 2022

                                        /s/ Gary R. Brown
                                        HON. GARY R. BROWN
                                        United States District Judge